1  BRIAN L. JOHNSRUD, State Bar No. 184474
   PATRICK SHERMAN, State Bar No. 229959
2  CURLEY, HESSINGER & JOHNSRUD LLP
   4400 Bohannon Drive, Suite 230
3  Menlo Park, CA 94025
   Telephone:    650.600.5300
4  Facsimile:    650.323.1002
   E-mail:  bjohnsrud@curleyhessinger.com
5            psherman@curleyhessinger.com

6  Attorneys for Petitioner
   GOOGLE INC.

7

8                    UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

10

11  GOOGLE INC.,                        Case No. _____

12                    Petitioner,       **GOOGLE INC.'S MEMORANDUM OF
                                        POINTS AND AUTHORITIES IN
13            v.                        SUPPORT OF ITS PETITION TO
                                        COMPEL ARBITRATION PURSUANT TO
14  RIVKA SPIVAK,                       WRITTEN AGREEMENT TO
                                        ARBITRATE**
15                    Respondent.
                                        [Hearing Date/Tim/Dept to be determined after
16                                      assignment to Judge or Magistrate]

17

18

19

20

21

22

23

24

25

26

27

28

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION .................................................................................................. 1

II. FACTS ................................................................................................................... 1

    A. Spivak Joins Google And Agrees To Arbitration. ..................................... 1

    B. Spivak Works For Google As A Product Manager, And Now Threatens To Bring Employment Claims Against Google That Are Subject To Her Agreement To Arbitrate. .................................................................................. 3

    C. Spivak Asserts Her Claims Should Be Arbitrated In The State Of Washington Despite The Mandatory Santa Clara County Forum Selection Clause. .................. 4

III. LEGAL ARGUMENT ............................................................................................ 4

    A. The Federal Arbitration Act Applies To The Instant Petition To Compel And Reflects A Public Policy Favoring Arbitration. ......................................... 4

    B. This Petition Is Ripe For Adjudication Because Spivak Has Refused To Arbitrate In Santa Clara County As Required Under The Agreement. .................... 5

    C. The Agreement Encompasses All Of Spivak's Claims. ............................ 9

    D. Spivak Cannot Carry Her Burden Of Establishing Any Basis To Revoke The Agreement. .................................................................................................. 9

        1. Spivak Cannot Establish Procedural Unconscionability. ........................... 10

        2. Spivak Cannot Establish That The Agreement Is Substantively Unconscionable. ............................................................................................ 11

            a. The Costs-Sharing Provision Is Not Substantively Unconscionable. ............................................................................... 11

            b. The Prevailing Party Attorney's Fees Provision Is Not Substantively Unconscionable. ......................................................... 11

            c. The Forum Selection Clause Is Not Substantively Unconscionable. ............................................................................... 12

IV. CONCLUSION ...................................................................................................... 13

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

i

GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                                                     Page No.

3

4   *Adler v. Fred Lind Manor*
        153 Wn.2d 331 (Wash. 2004) .................................................................................. 10

5   *Allied-Bruce Terminix Cos. v. Dobson*
        513 U.S. 265 (1995) .................................................................................................. 5

6
    *AT&T Mobility v. Concepcion*
7       131 S. Ct. 1740 (2011) ..................................................................................... 4, 9, 13

8   *Bank of America, N.A. v. Mille*
        108 Wn. App. 745 (Wash. Ct. App. 2001) ........................................................... 12

9
    *Bradley v. Harris Research, Inc.*
10      275 F.3d 884 (9th Cir. 2001) .................................................................................. 12

11  *Bremen v. Zapata Off-Shore Co.*
        407 U.S. 1 (1972) .............................................................................................. 6, 7, 8

12
    *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
13      207 F.3d 1126 (9th Cir. 2000) .................................................................................. 9

14  *Circuit City Stores v. Adams*
        532 U.S. 105 (2001) .............................................................................................. 4, 5

15
    *Elli v. Genmab, Inc.*
16      2006 U.S. Dist. LEXIS 74615 (D.N.J. Oct. 13, 2006) ......................................... 7, 8

17  *First Options of Chicago, Inc. v. Kaplan*
        514 U.S. 938 (1995) .................................................................................................. 9

18
    *Granite Rock Co. v. Int'l. Broth. of Teamsters*
19      561 U.S. 287 (2010) .................................................................................................. 9

20  *Green Tree Fin. Corp. v. Randolph*
        531 U.S. 79 (2000) .................................................................................................... 9

21
    *In re Cintas Corp. Overtime Pay Arbitration Litig.*
22      2007 U.S. Dist. LEXIS 5479 (N.D. Cal. Jan. 9, 2007) ............................................ 8

23  *Loughlin v. Ventraq, Inc.*
        2011 U.S. Dist. LEXIS 37012 (S.D. Cal. Apr. 4, 2011) ....................................... 7, 8

24
    *Manetti-Farrow, Inc. v. Gucci America, Inc.*
25      858 F.2d 509 (9th Cir. 1988) .................................................................................... 6

26  *Marmet Health Care Ctr., Inc. v. Brown*
        132 S. Ct. 1201 (2012) (per curiam) ........................................................................ 4

27
    *Nelson v. McGoldrick*
28      127 Wash. 2d 124 (Wash. 1995) ............................................................................ 11

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

ii                    GOOGLE INC.'S MPA ISO PETITION TO COMPEL
                      ARBITRATION (CASE NO. _____)

*OPE Int'l. L.P. v. Chet Morrison Contractors, Inc.*
258 F.3d 443 (5th Cir. 2001)............................................................................. 12

*Pauly v. Biotronik, GmbH*
738 F. Supp. 1332 (D. Or. 1990) .................................................................... 6, 8

*Scherk v. Alberto-Culver Co.*
417 U.S. 506 (1974)............................................................................................ 6

*Southland Corp. v. Keating*
465 U.S. 1 (1984)................................................................................................ 5

*Spradlin v. Lear Siegler Management Servs. Co.*
926 F.2d 865 (9th Cir. 1991)........................................................................ 6, 12

*Tjart v. Smith Barney, Inc.*
107 Wn. App. 885 (Wash. Ct. App. 2001).................................................... 10

*Voicelink Data Services, Inc. v. Datapulse, Inc.*
86 Wash. App. 613 (Wash. Ct. App. 1997) .................................................. 13

*Walters v. A.A.A. Waterproofing, Inc.*
151 Wn. App. 316 (Wash. Ct. App. 2009)................................................ 11, 13

*Zuver v. Airtouch Communications*
153 Wn.2d 293 (Wash. 2004) ................................................... 9, 10, 11, 12

**Statutes**

California Code of Civil Procedure § 1282.4(b)............................................... 8

Federal Arbitration Act 9 U.S.C. § 2 ............................................................ 4, 5

Federal Arbitration Act 9 U.S.C. § 4 ................................................................. 5

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

iii

GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)

I.      **INTRODUCTION**

Petitioner Google Inc. requests an order compelling Respondent Rivka Spivak to arbitrate the claims arising out her employment in the agreed-upon forum location of Santa Clara County, California. Spivak asserts that the arbitration should take place in Kings County, Washington. Spivak cannot carry her heavy burden to invalidate the forum selection provision, which is a question of federal law, nor can she establish any other basis to revoke her agreement to arbitrate. Spivak is a highly educated employee who holds graduate and law degrees. She was certainly capable of understanding the terms of the arbitration agreement she signed. She is also highly compensated, including through Google stock grants, and cannot carry her burden of establishing that arbitrating in Santa Clara would render her unable to pursue her claims. Google thus respectfully requests that the Court enter an order compelling Spivak to arbitrate her claims in Santa Clara County, where the key management and human resources witnesses are located, in accordance with the terms of the arbitration agreement.

II.     **FACTS**

A.      **Spivak Joins Google And Agrees To Arbitration.**

Spivak joined Google in April 2010 as a Product Manager, working out of Google's New York City office. (Declaration of Ariana Tortorici ("Tortorici Decl.") ¶¶ 3-4.) Spivak's educational background, as reflected on her Google Employment Application, includes a Bachelor's of Science degree in Computer Science from Yale University, a Master's in Computer Science from Yale, a Master's in Business Administration from Harvard Business School, and a Juris Doctorate from Concord Law School. (Tortorici Decl. ¶ 2, Exhibit A.)

At the time Spivak applied for employment with Google, she was employed as VP of Product Management at Roubini Global Economics in New York City, earning in excess of $200,000 per year. (*Id.*) Before that, Spivak worked as a Senior Product Manager at Rearden Commerce in Foster City, California, earning in excess of $150,000 per year. (*Id.*) Google offered Spivak employment on or about February 26, 2010, as reflected in her offer letter. (Tortorici Decl. ¶ 2, Exhibit B.)

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

1

GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____ )

1       When Spivak joined Google in April 2010, she agreed to an At-Will Employment,

2   Confidential Information, Invention Assignment, and Arbitration Agreement ("Agreement").

3   (Tortorici Decl. ¶ 3, Exhibit C.)  Spivak accepted the Agreement through her electronic signature

4   on April 12, 2010.  (Tortorici Decl. ¶ 3, Exhibits C and D.)  The Agreement includes a plainly

5   labeled arbitration provision, set forth in Section 15 of the Agreement.  (Tortorici Decl. ¶ 3,

6   Exhibit C.)  The arbitration provision covers all claims arising out of or relating to Spivak's

7   employment.  It provides:

8           I agree that any and all controversies, claims, or disputes with
            anyone (including the Company and any employee, officer,

9           director, shareholder or benefit plan of the Company in their
            capacity as such or otherwise) … arising out of, relating to, or

10          resulting from my employment with the Company … shall be
            subject to binding arbitration administered by Judicial Arbitration

11          and Mediation Services, Inc. ("JAMS"), pursuant to its
            Employment Arbitration Rules & Procedures (the "JAMS Rules").

12

13  (Tortorici Decl. ¶ 3, Exhibit C, §15(a).)  The arbitration provision is expressly mutual, in that it

14  provides: "I further understand that this agreement to arbitrate also applies to any disputes that the

15  Company may have with me."  (*Id.*)  The Agreement mandates that "any arbitration under this

16  agreement shall be conducted in Santa Clara County, California."  (Tortorici Decl. ¶ 3, Exhibit C,

17  §15(b).)  The Agreement further provides that the parties "will split any administrative or hearing

18  fees charged by the arbitrator or JAMS," except that Spivak will pay the entire filing fee

19  associated with any arbitration she initiates.  (*Id.*)  The Agreement also provides that "the

20  arbitrator shall award attorneys' fees and costs to the prevailing party, except as prohibited by

21  law."  (*Id.*)

22      Spivak's starting annual base salary with Google in 2010 was $155,000, and over time

23  that has increased to $215,000 per year.  (Tortorici Decl. ¶ 2.)  Spivak is also eligible for annual

24  bonuses in the amount of 20 percent of the median salary of her peer group, and received a grant

25  of 500 shares of Google stock at the time of her hire, which have fully vested and have a current

26  market value in excess of $250,000.  (*Id.*)

27

28

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

2

GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)

**B.    Spivak Works For Google As A Product Manager, And Now Threatens To Bring Employment Claims Against Google That Are Subject To Her Agreement To Arbitrate.**

From 2010 until the end of 2013, Spivak worked for Google out of its New York City office and resided in New York City. (Tortorici Decl. ¶ 4.) Spivak worked as a Product Manager, which involved participating in the launch of new or updated versions of software products used by Google and its customers across the country and throughout the world, including advertising optimization platforms that allow publishers and customers to interact and conduct business. (*Id.*) At the end of 2013, Spivak transferred to Google's office in Seattle, Washington, where she continued to work as a Product Manager. (*Id.*) While employed by Google in Washington, Spivak has worked on software products that among other things require her to validate the needs of customers and help develop engineering strategies that assist Google customers around the world. (*Id.*)

Spivak has threatened a number of employment claims against Google, all of which arise from or relate to her employment, and are therefore subject to the arbitration provision in her Agreement. (Declaration of Michael Pfyl ("Pfyl Decl.") ¶ 3; Tortorici Decl. ¶ 3, Exhibit C, §15(a).) Spivak has threatened claims, both internally, and externally through her legal counsel, and as recently as June 18, 2015. (Pfyl Decl. ¶ 3.) Those claims include allegations of gender discrimination and retaliation under the Washington Law Against Discrimination and the New York State Human Rights Law. (*Id.*) Spivak claims she received allegedly unfair performance evaluations, was placed on a Performance Improvement Plan, was denied promotion and stock grants, and denied a transfer (notably, to a role in Los Angeles, California). (Tortorici Decl. ¶ 5.) Spivak's allegations regarding her employment in the State of Washington are attributed primarily to two different managers, both of whom live in the San Francisco Bay Area and both of whom work in Google's headquarters in Mountain View, California. (*Id.*) Spivak has demanded millions of dollars from Google in claimed economic damages, as well as substantial emotional distress damages. (Pfyl Decl. ¶ 3.) Google denies Spivak's allegations and monetary demands. (*Id.*)

C.     **Spivak Asserts Her Claims Should Be Arbitrated In The State Of Washington Despite The Mandatory Santa Clara County Forum Selection Clause.**

Notwithstanding the Agreement, Spivak (through her legal counsel) has stated her position that the arbitration of her claims should proceed in Kings County, Washington, where she resides and where her legal counsel is based, instead of the agreed-upon location of Santa Clara County. (Pfyl Decl. ¶ 4.) Spivak's position is prejudicial to Google because it breaches the Agreement and because the rationale for the Santa Clara County forum selection clause is met, including for the reasons that: (1) Spivak's managers who are most directly accused by her of discrimination reside in the Bay Area and are based in Mountain View; (2) the Google Human Resources professionals who reviewed and responded to Spivak's internal claims reside in the Bay Area and are based in Mountain View; (3) the documents that Spivak will likely request in connection with her threatened claims are stored in Mountain View and will be reviewed and produced from Mountain View; and (4) the Google attorney managing this case and Google's outside counsel reside and work in the San Francisco Bay Area. (*Id.*) Spivak's lawyer can easily commence an arbitration in California because JAMS (the designated arbitration service provider) requires only that her lawyer complete an Out Of State Form. (*Id.*)

III.     **LEGAL ARGUMENT**

A.     **The Federal Arbitration Act Applies To The Instant Petition To Compel And Reflects A Public Policy Favoring Arbitration.**

The Federal Arbitration Act (FAA) provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a federal public policy favoring the arbitration of disputes and courts are required to "rigorously" enforce the parties' agreement to arbitrate. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2010); *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (per curiam). The FAA applies with full force to arbitration agreements in the employment context. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) ("We have been clear in

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

4

GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)

1    rejecting the supposition that the advantages of the arbitration process somehow disappear when

2    transferred to the employment context.").

3        As noted, the FAA applies to arbitration provisions evidencing a "transaction involving

4    commerce." *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984). In *Circuit City Stores v.*

5    *Adams*, 532 U.S. 105 (2001), the Supreme Court explained that "what Congress intended when it

6    legislated to cover contracts 'involving commerce,' . . . [was to] provid[e] that coverage would

7    extend to the outer constitutional limits under the Commerce Clause." *Circuit City Stores v.*

8    *Adams*, 532 U.S. 105, 134 (2001). The *Adams* court noted that it has "interpreted § 2's 'involving

9    commerce' phrase as implementing Congress' intent 'to exercise [its] commerce power to the

10   full.'" *Id.* at 112, *quoting Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277 (1995).

11       Given the Supreme Court's broad interpretation of "a transaction involving commerce,"

12   the Agreement here is plainly subject to the FAA. The Agreement is part and parcel of the

13   employment relationship by which Google hired Spivak to work as a Product Manager on

14   versions of software products and tools used by Google and its customers across the country and

15   throughout the world, including advertising optimization platforms that allow publishers and

16   customers to interact and conduct business. (Tortorici Decl. ¶ 4.) And, the Agreement requires a

17   California resident (Google) to arbitrate disputes with the citizen of Washington (Spivak),

18   through JAMS, a nationwide provider of arbitration services. (Tortorici Decl. ¶ 3, Exhibit C,

19   §15(a).) In short, there is no doubt that the FAA applies.

20   **B.    This Petition Is Ripe For Adjudication Because Spivak Has Refused To**
     **Arbitrate In Santa Clara County As Required Under The Agreement.**
21

22       A party to an arbitration agreement covered by the FAA may petition the district court for

23   an order compelling arbitration of a covered dispute. 9 U.S.C. § 4. If the court orders arbitration,

24   the FAA provides that arbitration must proceed "in accordance with the terms of the agreement"

25   and "shall be within the district in which the petition for an order directing such arbitration is

26   filed." *Id.*

27       In this case, the Agreement contains two terms that bear on the instant Petition. First, the

28   Agreement provides that "I agree that any arbitration under this agreement shall be conducted in

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

5    GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)

1    Santa Clara County, California." (Tortorici Decl. ¶ 3, Exhibit C, §15(a).)  Second, the Agreement

2    provides that "[t]o the extent that any lawsuit is permitted under this Agreement, I hereby

3    expressly consent to the exclusive personal jurisdiction of the state and federal courts located in

4    California for any lawsuit filed against me by the Company." (Tortorici Decl. ¶ 3, Exhibit C,

5    §16(a).)

6        In this diversity jurisdiction case, federal procedural law governs the forum selection

7    clause. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) ("the

8    federal procedural issues raised by forum selection clauses significantly outweigh the state

9    interests, and the federal rule … controls enforcement of forum clauses in diversity cases."). In

10   *Bremen v. Zapata Off-Shore Co.*, the Supreme Court held that forum selection clauses are

11   presumptively valid and any party challenging such a clause bears a "heavy burden" to show that

12   it should be set aside. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, 15, 17 (1972).  The party

13   opposing the forum-selection clause must show that it would "be so gravely difficult and

14   inconvenient that [she] for all practical purposes would be deprived of [her] day in court." *Id.* at

15   18. "*Bremen* mandates enforcement of such clauses absent a showing of fraud, undue influence,

16   overweening bargaining power, or such serious inconvenience in litigating in the selected forum

17   as to deprive the party seeking to avoid enforcement of a meaningful day in court." *Spradlin v.*

18   *Lear Siegler Management Servs. Co.*, 926 F.2d 865, 867 (9th Cir. 1991) (affirming trial court's

19   decision enforcing forum selection clause requiring employee, who had moved to California, to

20   litigate his claims in the specified forum of Saudi Arabia).  *Bremen* has been extended to

21   arbitration agreements. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519-520 (1974) ("An

22   agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-

23   selection clause that posits not only the situs of suit but also the procedure to be used in resolving

24   the dispute.")

25       Following *Bremen*, federal district courts have regularly enforced forum selection clauses

26   in arbitration agreements.  For example, in *Pauly v. Biotronik, GmbH*, 738 F. Supp. 1332, 1334-

27   35 (D. Or. 1990) the court applied *Bremen* and enforced arbitration and forum selection clauses

28   requiring disputes to be arbitrated in the International Chamber of Commerce in Paris in an

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

6          GOOGLE INC.'S MPA ISO PETITION TO COMPEL
           ARBITRATION (CASE NO. _____)

1   employment agreement between a German biotech firm and two American engineers, despite the

2   fact that the employees argued "extreme inconvenience" due in part to the fact that one of them

3   did not speak the language in which the proceedings would be conducted.

4          Similarly, in *Loughlin v. Ventraq, Inc.*, 2011 U.S. Dist. LEXIS 37012 (S.D. Cal. Apr. 4,

5   2011), the court applied *Bremen* and enforced a forum selection clause in an arbitration provision

6   requiring a California resident to arbitrate his employment claims in the selected forum of Mt.

7   Laurel, New Jersey.  Notably, the plaintiff was represented by counsel in the negotiation of the

8   agreement, and specifically requested the removal of the arbitration and forum provisions.  *Id.* at

9   *3.  The employer refused to remove those provisions, and the parties executed the agreement.

10  The court found that, although the plaintiff claimed that arbitrating in New Jersey would be a

11  "serious inconvenience" because he resided in San Diego, he acknowledged at oral argument that

12  arbitrating in New Jersey would not deprive him of his day in court.  *Id.* at *22.  The court

13  concluded that the forum selection provision was valid and enforceable.

14         Finally, in *Elli v. Genmab, Inc.*, 2006 U.S. Dist. LEXIS 74615 (D.N.J. Oct. 13, 2006), the

15  plaintiff, an executive who worked in New Jersey, challenged a forum selection clause in an

16  arbitration provision in his employment agreement.  The arbitration provision required that any

17  dispute with his employers (a New Jersey corporation and its Danish parent company) would be

18  governed by Danish law and resolved by arbitration with the Danish Institute of Arbitration in

19  Copenhagen.  The arbitration provision further required that the proceedings be conducted in

20  Danish.  *Id.* at *3-4.  Following the termination of his employment, the plaintiff brought suit

21  against his former employers in New Jersey alleging breach of the employment agreement and

22  various tort claims, and also sought declaratory judgment invalidating the forum selection clause.

23  The plaintiff argued, under *Bremen*, that the forum selection provision was unreasonable and

24  unenforceable, asserting: (1) at least 90 percent of the subject matter of the employment

25  agreement was his work in New Jersey; (2) all records and documentation pertaining to his

26  employment were stored in New Jersey; (3) all of the personnel who negotiated his employment

27  agreement were located in New Jersey; (4) all the negotiations surrounding his employment took

28  place in English; and (5) all the potential witnesses speak the English language.  The plaintiff also

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

7          GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____ )

1    alleged that the arbitration provider would charge him a substantial fee to initiate arbitration

2    proceedings. The court rejected the plaintiff's arguments, finding that there was a solid

3    relationship to the selected forum and that, under *Bremen*, the forum selection clause requiring

4    arbitration in Denmark was not so unreasonable as to be unenforceable.

5         In this case, Spivak falls far short of showing that arbitrating her claims in California

6    would be so "gravely difficult and inconvenient that [she] for all practical purposes would be

7    deprived of [her] day in court." *Bremen,* 407 U.S. at 18. All of the plaintiffs in the foregoing

8    cases were forced to travel substantially farther than the distance from Seattle to Santa Clara,

9    which is the specified forum here. As a practical matter, arbitrations are generally much shorter

10   than jury trials, and requiring Spivak to come to California for possibly a week or so of arbitration

11   would hardly deprive her of her claims. The key management and human resources witnesses

12   reside and work in Santa Clara County. Google is not insisting that Spivak travel to a foreign

13   country, nor is it asking her to arbitrate under the substantive law of another state, or conduct

14   proceedings in a foreign language. She can easily arbitrate her Washington and New York state

15   law claims in California, and her Washington counsel can easily appear before JAMS in

16   California. *See* Code of Civil Procedure Section 1282.4(b). In sum, given the forum selection

17   clauses and arbitration provisions that were enforced in the *Pauly, Loughlin,* and *Elli* cases,

18   Spivak cannot carry her heavy burden to avoid Santa Clara County. She should thus be

19   compelled to honor her agreement to arbitrate in Santa Clara County.

20        Nor can there be any argument that the instant Petition is not ripe for review. "If the

21   written agreement contains a place-of-arbitration clause, then logically, a party's attempt to

22   arbitrate elsewhere is a refusal to arbitrate under the agreement. This interpretation is also more

23   consistent with the Supreme Court's admonition that private agreements to arbitrate should be

24   enforced according to their terms.... Accordingly, the Court finds that Respondents have refused

25   to arbitrate within the meaning of section 4 of the FAA." *In re Cintas Corp. Overtime Pay*

26   *Arbitration Litig.*, 2007 U.S. Dist. LEXIS 5479, *43-44 (N.D. Cal. Jan. 9, 2007). Spivak has

27   similarly failed to honor the forum-selection clause in the arbitration agreement. Her threatened

28   claims arise under New York and Washington state law, neither of which require the exhaustion

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

8        GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____ )

1    of administrative remedies, so she is free to commence her threatened claims at any time.

2    Moreover, Spivak has averred that her New York claims are at risk under the applicable statute of

3    limitations and thus by agreement the parties tolled the New York limitations period through only

4    July 31, 2015, further confirming that this Petition is ripe for review.

5            **C.**      **The Agreement Encompasses All Of Spivak's Claims.**

6            Under Section 4 of the FAA, the Court must determine whether the agreement

7    encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126,

8    1130 (9th Cir. 2000). Any doubts concerning the scope of arbitral issues should "be resolved in

9    favor of arbitration." *Granite Rock Co. v. Int'l. Broth. of Teamsters*, 561 U.S. 287, 298 (2010).

10   In this case, the Agreement encompasses "any and all controversies, claims or disputes ... arising

11   out of, relating to, or resulting from my employment with the Company." (Tortorici Decl. ¶ 3,

12   Exhibit C, §15(a).) The Agreement expressly covers "any statutory claims under state or federal

13   law," including claims for discrimination. (*Id.*) Here, Spivak threatens claims for alleged

14   violation of various state and federal employment statutes, including discrimination and

15   retaliation laws, and arise from or relate to her employment. (Pfyl Decl. ¶ 3.) The Agreement

16   thus encompasses all of Spivak's claims.

17           **D.**      **Spivak Cannot Carry Her Burden Of Establishing Any Basis To Revoke The
18   Agreement.**

19           Google assumes that Spivak will claim that the Agreement should be invalidated upon

20   grounds that exist at law or equity. An agreement to arbitrate may be "invalidated by generally

21   applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that

22   apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate

23   is at issue." *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1746 (2011). Whether grounds for

24   revocation exist is a question of state law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

25   938, 944 (1995). Spivak bears the burden of showing that the agreement is unenforceable. *Green*

26   *Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000); *Zuver v. Airtouch Communications*, 153

27   Wn.2d 293, 302 (Wash. 2004).

28           Here, the agreement provides that "any arbitration under this agreement shall be

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

9        GOOGLE INC.'S MPA ISO PETITION TO COMPEL
         ARBITRATION (CASE NO. _____)

1  conducted in accordance with the laws of the state in which I am employed, and that the arbitrator

2  shall apply the substantive and procedural laws of that state…"  (Tortorici Decl. ¶ 3, Exhibit C,

3  § 15(b).)  In this case, that is Washington law, and as shown below, Spivak falls far short of

4  showing that the agreement is either procedurally or substantively unconscionable.

5            **1.**      **Spivak Cannot Establish Procedural Unconscionability.**

6       To establish procedural unconscionability, Spivak must show "[t]he lack of meaningful

7  choice, considering all the circumstances surrounding the transaction including 'the manner in

8  which the contract was entered,' whether each party had a 'reasonable opportunity to understand

9  the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine

10  print...'"  *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 898 (Wash. Ct. App. 2001).  Spivak

11  cannot carry her burden.  Here, at the time Spivak applied for employment with Google, she was

12  employed by Roubini Global Economics earning over $200,000 per year.  (Tortorici Decl. ¶ 2,

13  Exhibit A).  She held an MBA from Harvard Business School, and undergraduate and Master's

14  degrees in Computer Science from Yale, as well as a Juris Doctorate.  (*Id.*)  Spivak cannot

15  credibly argue that she lacked a meaningful choice in signing the Agreement, or that she did not

16  have the opportunity to understand the terms of the Agreement.

17       Before determining whether an agreement is procedurally unconscionable, the Court must

18  examine whether each party had a reasonable opportunity to understand the terms of the contract

19  and whether the important terms were hidden in a maze of fine print.  *Zuver v. Airtouch*

20  *Communications*, 153 Wn.2d 293, 303 (Wash. 2004).  Spivak cannot establish that she had a lack

21  of opportunity to understand the contract terms.  *See Tjart*, 107 Wn. App. at 897 ("One who

22  accepts a written contract is conclusively presumed to know its contents and to assent to them, in

23  the absence of fraud, misrepresentation, or other wrongful act by another contracting party.").

24  Nor can she establish that the arbitration provision was "hidden in a maze of fine print." *Adler v.*

25  *Fred Lind Manor*, 153 Wn.2d 331, 349 (Wash. 2004).  To the contrary, the arbitration provision

26  is plainly part of the caption of the Agreement and labeled at Section 15 of her Agreement, with

27  its terms called out in capital letters.  (Tortorici Decl. ¶ 3, Exhibit C, § 15.)  The terms of the

28  agreement are plainly worded, and Spivak cannot carry her burden to establish that the average

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

10    GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)

1    person could not understand them. In short, Spivak cannot establish that the Agreement is

2    procedurally unconscionable.

### 2. Spivak Cannot Establish That The Agreement Is Substantively Unconscionable.

5    Substantive unconscionability involves a clause or term that is particularly one-sided or

6    harsh. *Nelson v. McGoldrick*, 127 Wash. 2d 124, 131 (Wash. 1995). "Shocking to the

7    conscience," "monstrously harsh," and "exceedingly calloused" are terms used to define

8    substantive unconscionability. *Zuver*, 153 Wn.2d at 303. In this case, Spivak cannot carry her

9    burden of establishing any substantively unconscionable term.

### a. The Costs-Sharing Provision Is Not Substantively Unconscionable.

12    The Agreement provides: "I understand that the Company and I will split any

13    administrative or hearing fees charged by the arbitrator or JAMS, except that I shall pay the entire

14    filing fee associated with any arbitration that I initiate." (Tortorici Decl. ¶ 3, Exhibit C, § 15(b).)

15    Under Washington law, the Court "analyzes a fee-splitting provision in the context of the

16    particular circumstances of the parties to the arbitration agreement, rather than finding such a

17    provision to be per se unconscionable." *Zuver*, 153 Wn.2d at 309. "[T]he party opposing

18    arbitration has the burden of showing that the cost of arbitration is prohibitive by documenting his

19    financial resources, the extra costs of arbitration, and any offer by the other party to defray the

20    cost of arbitration." *Walters v. A.A.A. Waterproofing, Inc.*, 151 Wn. App. 316, 327 (Wash. Ct.

21    App. 2009). Here, Spivak cannot carry her burden given her salary of over $200,000 per year and

22    her other substantial compensation and resources, including from her Google stock grants.

23    (Tortorici Decl. ¶ 2.)

### b. The Prevailing Party Attorney's Fees Provision Is Not Substantively Unconscionable.

25    The Agreement provides: "I also agree that the arbitrator shall have the power to award

26    any remedies available under applicable law, and that the arbitrator shall award attorneys' fees

27    and costs to the prevailing party, except as prohibited by law." (Tortorici Decl. ¶ 3, Exhibit C,

28    § 15(b).) In *Zuver v. Airtouch Communications*, the Supreme Court of Washington addressed an

1    arbitration provision that provided that the "prevailing party in any arbitration may be entitled to

2    receive reasonable attorney's fees." *Zuver*, 153 Wn.2d at 310.  The employee opposing

3    arbitration argued that the provision was substantively unconscionable because an arbitrator

4    might make them pay the employer's attorney fees.  *Id.* The court rejected that argument,

5    reasoning: "it is mere speculation to assume that the arbitrator would disregard case law holding

6    that a prevailing defendant may receive attorney fees only if a plaintiff's discrimination claim was

7    'frivolous, unreasonable, or without foundation.'"  *Id.*  Since the attorney fee provision Spivak

8    challenges here only permits an award of fees and costs as permitted by law, and an award of

9    attorney's fees to a prevailing defendant under certain circumstances would be "prohibited by

10    law," Spivak cannot carry her burden of establishing substantive unconscionability.

11
12
       **c.**      **The Forum Selection Clause Is Not Substantively**
                 **Unconscionable.**

13       To the extent Spivak attempts to shoe horn the forum selection clause into an

14    unconscionability argument, her attempt fails for several reasons.

15       First, as discussed above, a challenge to a forum selection clause is a question of federal

16    law in diversity cases, placing a heavy burden on the party seeking to avoid the specified forum.

17    *Spradlin*, 926 F.2d at 867.  Not only do federal courts enforce forum selection clauses, they have

18    held that the FAA preempts state laws disfavoring or invalidating forum selection clauses. *See*

19    *e.g. Bradley v. Harris Research, Inc.*, 275 F.3d 884, 892 (9th Cir. 2001) (state law prohibiting out

20    of state forum for franchise contract preempted by FAA); *OPE Int'l. L.P. v. Chet Morrison*

21    *Contractors, Inc.*, 258 F.3d 443, 447-48 (5th Cir. 2001) (Louisiana statute conditioning

22    enforceability of arbitration agreements on Louisiana forum preempted by FAA).

23       Second, even if Washington state law applied to this issue, Washington law favors

24    enforcement of forum selection clauses and generally follows federal law.  *See Bank of America,*

25    *N.A. v. Miller,* 108 Wn. App. 745, 748 (Wash. Ct. App. 2001) (a "party arguing that the forum

26    selection clause is unfair or unreasonable bears a heavy burden of showing that trial in the chosen

27    forum would be so seriously inconvenient as to deprive the party of a meaningful day in court";

28    "[a]bsent evidence of fraud, undue influence, or unfair bargaining power, courts are reluctant to

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

12

GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)

invalidate forum selection clauses as they increase contractual predictability"); *Voicelink Data Services, Inc. v. Datapulse, Inc.*, 86 Wash. App. 613 (Wash. Ct. App. 1997) (forum selection clauses are enforced unless they are unreasonable and unjust; the resisting party has the heavy burden of proof; unreasonableness may be shown by evidence of fraud, undue influence, overweening bargaining power, or such serious inconvenience as to deprive the party of a meaningful day in court). Washington cannot use unconscionability to create a special rule disfavoring forum selection clauses when they are in arbitration agreements, as any such rule would be pre-empted by the FAA. *Concepcion*, 131 S. Ct. at 1746 (FAA does not allow arbitration agreements to be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.")

Finally, in a pre-*Concepcion* case, a Washington state court declined to enforce a forum selection clause in an arbitration agreement on facts certainly not present here. In *Walters v. A.A.A. Waterproofing,* 151 Wn. App. 316, 327 (Wash. Ct. App. 2009), the agreement provided that arbitration would take place in Denver, Colorado, near the location of the defendant employer's headquarters. The plaintiff opposed arbitration, arguing that the cost of traveling to the specified forum made arbitration inaccessible. The plaintiff provided detailed information about his family's financial circumstances. He and his wife were employed as corrections officers and earned a combined household gross income of under $94,000 per year. The plaintiff detailed his financial obligations, including supporting two children and making monthly payments to a bankruptcy trustee. Here, by contrast, Spivak's base salary alone is more than twice as much as the family's gross income in *Walters* and there is no record of her having filed for bankruptcy. Thus, to the extent the *Walters* decision is even considered given that (1) federal law controls the forum selection clause and (2) *Walters* pre-dates *Concepcion*, the facts here are nothing like the facts or procedural history of *Walters*.

In sum, Spivak cannot carry her burden of establishing procedural or substantive unconscionability.

## IV. CONCLUSION

Spivak agreed to arbitrate any employment claims against Google in Santa Clara County

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

13

GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)

1    and she has now failed to do so.  Because Spivak cannot establish any basis to invalidate the

2    Agreement, Google respectfully requests that the Court enter an order compelling Spivak to

3    arbitrate her claims in Santa Clara County, California in accordance with the terms of the

4    Agreement.

5    Dated: June 26, 2015                          CURLEY, HESSINGER & JOHNSRUD LLP

6

7                                                  By _____

8                                                     BRIAN L. JOHNSRUD
                                                     Attorneys for Petitioner
9                                                     GOOGLE INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CURLEY, HESSINGER &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

14    GOOGLE INC.'S MPA ISO PETITION TO COMPEL
ARBITRATION (CASE NO. _____)