# EXHIBIT A



## Employment Application

For office use only

Recruiting Coordinator: Sabrina Ruiz        Email: ssruiz@google.com        Applicant ID#: 13,897,417

Google is an equal opportunity, affirmative action employer. Qualified applicants are considered without regard to race, color, religion, veteran status, national origin, ancestry, pregnancy status, sex, gender identity or expression, age, marital status, mental or physical disability, medical condition, sexual orientation or any other characteristics protected by applicable law. Please do not substitute a resume in lieu of completing this application.

### Personal Data

| | | |
|---|---|---|
| Rivka | Spivak | 01/13/2010 |
| **First** | **Last** | **Today's Date (mm/dd/yyyy)** |
|  | New York, NY | 10011 |
| **Street Address** | **City, State** | **Zip Code** |
| **Email Address** | **Telephone (Day)** | **Telephone (Evening)** |

---

**Type of position desired:**
Product Management Director

**Preferred Work Location:**
NYC - but will relocate to Bay Area for good fit

**How did you hear about employment opportunities at Google or who referred you?**
Interviewed out of MBA program in 2005 - recently contacted by Marissa Mayer to consider current opportunities

**If hired, can you provide Google with proof of authorization to work in the US?** If no, please explain:  ☒ Yes  ☐ No

**Are there any restrictions on your availability to attend work on a regular basis or to work overtime?**  ☐ Yes  ☒ No

**Have you ever been convicted of a crime, felony or misdemeanor?**  ☐ Yes  ☒ No
(If yes, please describe the nature of the crime(s), including the date and place of conviction. A conviction will not necessarily disqualify an applicant from employment. Exclude convictions for marijuana-related offenses for personal use more than two years old; convictions that have been sealed, expunged or legally eradicated; and misdemeanor convictions for which probation was completed and the case was dismissed.)

### Educational Background

| Name of School | Country | Degree | Major Subject | Overall GPA* | Graduated? |
|---|---|---|---|---|---|
| Harvard Business School | USA | MBA | General Management | No GPA | ☒ Yes  ☐ No  ☐ Current Student |
| Yale University - Yale College | USA | B.S | Computer Science |  | ☒ Yes  ☐ No  ☐ Current Student |
| Yale Graduate School of Arts&Science | USA | M.S | Computer Science |  | ☒ Yes  ☐ No  ☐ Current Student |
| Concord Law School (online) | USA | JD | Law |  | ☐ Yes  ☐ No  ☐ Current Student |

\* Please use overall GPA **NOT** GPA in major. We may request your transcript or take other steps to verify Educational Background information, including degree and GPA. If you are unsure regarding your GPA, please leave that section blank until you are able to provide accurate information or submit your transcript.

### Professional References

| | OK to Contact? Yes No | | |
|---|---|---|---|
| **Name / Title / Business Relationship** | ☒ ☐ | **Telephone** | **Email Address** |
| **Name / Title / Business Relationship** | ☒ ☐ | **Telephone** | **Email Address** |
| **Name / Title / Business Relationship** | ☒ ☐ | **Telephone** | **Email Address** |

Revision 01.16. 2009



## Employment Application

| Current or Most Recent Employment | | | |
|---|---|---|---|
| Roubini Global Economics | New York, NY | | ████████ |
| Name of Employer | Location (City, State/Country) | | Telephone |
| VP Product Management | 5/5/2008 | - | $170k+20%(204k) + |
| Your Job Title | Employment Start Date | Employment End Date | Salary |
| ██████████ | | Role shift to mktg after product launch success | |
| Supervisor's Name and Title | | Reason For Leaving | |

| Previous Employment | | | |
|---|---|---|---|
| Rearden Commerce | Foster City, CA | | ████████ |
| Name of Employer | Location (City, State/Country) | | Telephone |
| Senior Product Manager | 3/2007 | 5/1/2008 | $150k + |
| Your Job Title | Employment Start Date | Employment End Date | Salary |
| ████████████████ | | Opportunity with Roubini Global Economics | |
| Supervisor's Name and Title | | Reason For Leaving | |

| Previous Employment | | | |
|---|---|---|---|
| Expedia  Inc | Bellevue, WA | | ███████ |
| Name of Employer | Location (City, State/Country) | | Telephone |
| Group Program Manager | 8/1999 | 8/2003 | ~$100k + |
| Your Job Title | Employment Start Date | Employment End Date | Salary |
| ███████████████ | | Business School | |
| Supervisor's Name and Title | | Reason For Leaving | |

### Authorization: Please read carefully and check the box below

I understand that Google requires certain information about me to evaluate my qualifications for employment and to conduct its business if I become an employee.  I authorize Google to research my past employment, educational credentials, and other employment related activities.  I hereby release Google, its partners, employees, representatives, and agents and those parties supplying such information to Google from all liability in connection with obtaining or releasing such information.

If I am hired by Google, I understand that Google is an at-will employer.  Accordingly, either Google or I may terminate the employment relationship, at will, at any time, for any reason, with or without cause or advance notice.  I understand that the CEO or the President of Google has the sole authority to make an agreement contrary to at-will employment, and such an agreement must be in writing and signed by the CEO or President.

I understand that if I am hired I will be required to submit proof of my legal right to work in the U.S. prior to commencing employment with Google.

I understand that any misrepresentations, false statements or omissions of facts made by me in connection with this application will be sufficient grounds for cancellation of consideration of my application or immediate discharge if I am employed.  I have read the above prior to signing this application.

I understand that this application is not a contract of employment, and that the completion of this application does not in any way obligate Google to hire me or offer me a job.

☑  **I have read and understood the above disclosure**

Google, Inc.
1600 Amphitheatre Parkway, Mountain View, CA 94043
Tel: (650) 253-0000, Fax: (650) 253-0001



## Employment Application

### NON-DISCLOSURE AGREEMENT

In order to evaluate a potential employment opportunity with Google (the "Purpose"), Google Inc., for itself and its subsidiaries and affiliates, and the individual identified below hereby agree:

**1.** This agreement is effective as of the date signed below.

**2.** Google may disclose to the other party (the "Recipient") information pertaining to the Purpose that the Google considers confidential ("Confidential Information").

**3.** Recipient may use Confidential Information only for the Purpose. Recipient must use a reasonable degree of care to protect Confidential Information and to prevent: any unauthorized use or disclosure of Confidential Information. Recipient may share Confidential Information with his / her legal counsels who are engaged by Recipient in discussions concerning the Purpose. Further Recipient may share the fact that he / she interviewed with Google and visited Google's facilities and the terms of any written offer of employment by Google, if such offer is extended.

**4.** Confidential Information does not include information that: (a) was known to Recipient without restriction before receipt from Google; (b) is publicly available through no fault of Recipient; (c) is rightfully received by Recipient from a third party without a duty of confidentiality; or (d) is independently developed by Recipient. Recipient may disclose Confidential Information when compelled to do so by law if it provides reasonable prior notice to Google, unless a court orders that Google not be given notice.

**5.** Either party may terminate this agreement with thirty days prior written notice, but this agreement's provisions will survive as to Confidential Information that is disclosed before termination.

**6.** Unless the parties otherwise agree in writing, Recipient's duty to protect Confidential Information expires five years from disclosure.

**7.** This agreement imposes no obligation to proceed with any business transaction.

**8.** Recipient acquires no intellectual property rights under this agreement except the limited rights necessary to use the Confidential Information for the Purpose.

**9.** This agreement does not create any agency or partnership relationship. This agreement is not assignable or transferable by either party without the prior written consent of the other party.

**10.** This agreement is the parties' entire agreement on this topic, superseding any prior or contemporaneous agreements. Any amendments must be in writing. The parties may execute this agreement in counterparts, which taken together will constitute one instrument. Failure to enforce any of provisions of this agreement will not constitute a waiver.

**11.** This agreement is governed by the laws of the State of California, excluding its conflict-of-laws principles. The exclusive venue for any dispute relating to this agreement shall be Santa Clara County, California.

| |
|---|
| **Interviewee -** I consent to the use of electronic signature.  ☑ Yes  ☐ No |
| If no, please contact your recruiter to submit a hardcopy application. Please note, processing delays are possible in the event you do not use e-signature. |
| Electronic signature date (MM/DD/YY): ___1/13/2010___ |
| Electronic signature: Rivka Spivak   *Digitally signed by Rivka Spivak DN: cn=Rivka Spivak, o, ou, email=spivak@gmail.com, c=US Date: 2010.01.13 23:21:16 -05'00'* |

Google, Inc.
1600 Amphitheatre Parkway, Mountain View, CA 94043
Tel: (650) 253-0000, Fax: (650) 253-0001

# EXHIBIT B

1389 74A                                                    101235

Google Inc.                          Main 650 253.0000
1600 Amphitheatre Parkway                                 Fax 650 253.0001
Mountain View, CA 94043                                   www.google.com

Rivka Spivak                                              February 26, 2010

New York, New York 10011

Dear Rivka:

On behalf of Google Inc., I am pleased to offer you the exempt position of Senior Product Manager. You will receive an annual salary of $155,000.00, which will be paid biweekly and subject to a periodic review. You are eligible to participate in the company discretionary bonus plan; your annual bonus target will be 20% of the median salary for your peer group (as determined by Google). The actual bonus amount could be larger or smaller than this amount, based on your performance, and the performance of the company. The exact bonus amount is at the sole discretion of Google.

Additionally, Google will also pay you a one time Sign-On Bonus of $20,000.00. This will be taxed as supplemental income. We encourage you to consult a tax professional for information on all current IRS reporting requirements. Should you terminate your position at Google within your first calendar year of employment, you will be required to repay the Sign-On Bonus on a prorated basis.

To assist you with some of the costs associated with your move, Google will provide you with reimbursement for specified moving expenses. In order to receive the Relocation Benefit, you will be required to work with a third party vendor provider designated by Google to assist in employee moves. In addition, Google will pay you a one-time relocation bonus of $3,500.00 which will be taxed as supplemental income. We encourage you to consult a tax professional for information regarding all current tax reporting requirements related to this benefit. Should you terminate your position at Google within the first twelve months of your employment, you will be required to repay the relocation bonus on a pro-rated basis.

In addition, as a regular full-time employee you will be eligible for various benefits offered to similarly-situated Google employees in accordance with the terms of Google's policies and benefit plans. Among other things, these benefits currently include medical and dental insurance, life insurance, and a 401(k) retirement plan. You will automatically be enrolled in the pre-tax 401(k) plan at 5% into the Wellesley Fund, which is a balanced fund of stocks and bonds. You will be able to change your deferral amount and fund allocation upon your hire. The eligibility requirements and other information regarding these benefits are set forth in more detailed documents that are available from Google. With the exception of the "employment at-will" policy discussed herein, Google may, from time to time in its sole discretion, modify or eliminate its policies and the benefits offered to employees.

Upon approval by our Board of Directors, you will be granted 500 Google Stock Units (GSUs). Your GSUs will vest at a rate of 1/4th each year over the next four years, beginning on the date one year after you commence employment. At that time, based on your performance, the vested number of GSUs will convert to a number of Google Class A common shares. For your grant, the target number of common shares you will receive on each of the four vesting dates is 125. The actual number of shares you receive can vary from 0% to 200% of the target amount per year (i.e., 0 to 250 shares) based on your individual performance relative to expectations.

Vesting in GSUs is contingent on continued employment on the applicable vesting dates. New Hire grants take place every Wednesday and your grant will be made as soon as they are approved by either the Board or a Board Designee, which is typically on the Wednesday of the week following your date of hire. Further details on this plan will be available to you shortly after you begin your employment with Google. Please be aware that this program and subsequent processes could be changed at any time, at the discretion of the Board of Directors.

You are being offered employment at Google based on your personal skills and experience, and not due to your knowledge of any confidential, proprietary or trade secret information of a prior or current employer. Should you accept this offer, we do not want you to make use of or disclose any such information or to retain or disclose any materials from a prior or current employer. Likewise, as an employee of Google, it is likely that you will become knowledgeable about confidential, trade secret and/or proprietary information related to the operations, products and services of Google and its clients. To protect the interests of both Google and its clients, all employees are required to read and sign the enclosed At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement as a condition of employment with Google. This Agreement, which provides for arbitration of all disputes arising out of your employment, is enclosed for your review; you will be required to sign it on your first day of employment.

4.14.10

# Google

Google has a strict policy against insider trading, which prohibits, among other things, employees, contractors and temporary workers from trading Google stock during certain time periods and engaging in any derivative transactions in Google stock. It will be your responsibility to educate yourself regarding Google's insider trading policies and to ensure you are in full compliance. If you have any questions about Google's policy against insider trading, please contact Human Resources.

If an export control license is required in connection with your employment, this offer is further contingent upon Google's receipt of the export control license and any similar approvals. Your employment with Google will commence following receipt of such export control license and governmental approvals; and is conditioned upon your (a) maintaining your employment with Google, and (b) continued compliance with all conditions and limitations contained in such a license. If for any reason such export control license and governmental approvals cannot be obtained within six (6) months from your date of signature, this offer will automatically terminate and have no force and effect.

Please understand that this letter does not constitute a contract of employment for any specific period of time, but will create an "employment at-will" relationship. This means that the employment relationship may be terminated with or without cause and with or without notice at any time by you or Google. No individual other than the Chief Executive Officer of Google has the authority to enter into any agreement for employment for a specified period of time or to make any agreement or representation contrary to Google's policy of employment at-will. Any such agreement or representation must be in writing and must be signed by you and the Chief Executive Officer. Your signature at the end of this letter confirms that no promises or agreements that are contrary to our at-will relationship have been committed to you during any of your pre-employment discussions with Google, and that this letter, along with the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, contain our complete agreement regarding the terms and conditions of your employment.

We look forward to an early acceptance of this offer. This offer will remain open for 5 (five) business days following your receipt of this letter and is contingent upon your start date within the month of April, 2010. Additionally, this offer and your employment are contingent upon satisfactory results from your background check and reference checks. To indicate your acceptance of Google's offer, please sign sign and date the enclosed original and return it to us in the envelope provided. A duplicate original is enclosed for your record. **Please arrive at 8:00 am on your first day of employment for a tour of the office and for your new hire orientation. Orientation will be held at 1600 Amphitheatre Parkway, Building 43, Mountain View, CA.** In order for Google to comply with the Immigration Reform and Control Act, your employment with Google is contingent on your eligibility to work in the United States. Accordingly, please bring appropriate verification or authorization to work in the United States (e.g. US Passport or Driver's License and Social Security Card) on your first day.

Rivka, we look forward to working with you.

Sincerely,

Jonathan Rosenberg
Sr. Vice President of Product Management
Google Inc.

I accept this offer of employment with Google and agree to the terms and conditions outlined in this letter.

| Rivka Spizel | 3/23/10 | 4/19/10 |
|---|---|---|
| | Date | Planned Start Date (Monday) |

# EXHIBIT C

GOOGLE INC.

AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT

As a condition of my employment with Google Inc., its subsidiaries, affiliates, successors or assigns (together "the Company"), and in consideration of receipt of confidential information, my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

**1. At-Will Employment.** I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF THE COMPANY. ACCORDINGLY, I ACKNOWLEDGE THAT MY EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT MY OPTION OR AT THE OPTION OF THE COMPANY, WITH OR WITHOUT NOTICE.

**2. Confidential Information**

(a) *Company Information.* I understand that, as a result of my employment with the Company, I will obtain extensive and valuable Confidential Information belonging to the Company. I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Chief Executive Officer or the Board of Directors of the Company, any Company Confidential Information, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that "Company Confidential Information" means any Company non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans, or other information regarding Company's products or services and their marketing, the identity of the Company's customers (including, but not limited to, customer lists and the identity of customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Company Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

(b) *Former Employer Information.* I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) *Third Party Information.* I recognize that the Company may have received and in the future may receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners, or collaborators, their confidential or proprietary information ("Associated Third Party Confidential Information"). By way of example, Associated Third Party Confidential Information may

include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use or to disclose to any person, firm or corporation any Associated Third Party Confidential Information, except as necessary in carrying out my work for the Company consistent with the

Eff. Date: 4.28.08
Non-CA Version

Page 1 of 9

Company's agreement with such Associated Third Parties. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information during my employment will lead to disciplinary action, up to and including immediate termination and legal action by the Company.

(d) *User Data*. User Data consists of information directly or indirectly collected by Google from users of its services. Â User Data includes individual log files related to any user session or use of Google services or log files in the aggregate. User Data also includes personally identifiable information, which is information that can be directly associated with a specific person or entity, such as a name, address, telephone number, e-mail address, or information about activities that can be directly linked to a user, such as an IP address or cookie information. Â I agree to treat User Data as Company Confidential Information under this Agreement and to access, use and disclose User Data only as authorized by and in accordance with this Agreement and Company policies.

## 3. Inventions

(a) *Inventions Retained and Licensed*. I have attached hereto as Exhibit A, a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets which were conceived in whole or in part by me prior to my employment with the Company to which I have any right, title or interest, which relate to the Company's business, products, or research and development (collectively referred to as "Prior Inventions"), which are not assigned to the Company hereunder; or, if no such list is attached, I represent and warrant that there are no such Prior Inventions. Furthermore, I represent and warrant that none of the Prior Inventions listed on Exhibit A of this Agreement will materially affect my ability to perform my obligations under this Agreement. If, in the course of my employment with the Company, I incorporate any Prior Invention into, or use any Prior Invention in connection with, any product, process, service, technology or other work by or on behalf of the Company, I hereby grant to the Company a nonexclusive, royalty-free, fully paid, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale, and sell such Prior Invention as part of or in connection with such product, process, service, technology or other work and to practice any method related thereto.

(b) *Assignment of Inventions*. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under patent, copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time that I am in the employ of the Company, or with the use of the Company's equipment, supplies, facilities, or

Company Confidential Information,(collectively referred to as "Inventions") except as prohibited by the law of the State in which I am employed by the Company and as otherwise set forth in Section 3(e) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Inventions developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

(c) *Maintenance of Records*. I agree to keep and maintain adequate, current, accurate, and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company. The records are and will be available to and remain the sole property of the Company at all times.

(d) *Patent and Copyright Registrations*. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions and any rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so,

Eff. Date: 4.28.08
Non-CA Version

any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions, including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Inventions, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me.

(e) Exception to Assignments. I understand that the provisions of this Agreement requiring assignment of Inventions to the Company shall not apply to any invention that I have developed entirely on my own time without using the Company's equipment, supplies, facilities, trade secret information or Confidential Information except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research or development of the Company or (ii) result from any work that I performed for the Company.Â  I will advise the Company promptly in writing of any inventions that I believe meet the foregoing criteria and not otherwise disclosed on Exhibit A.

**4. Conflicting Employment.**

(a) *Current Obligations*. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities, including, but not limited to, employment outside of the Company, membership on Boards of Directors or Advisory Boards other than the Company's, personal investments or establishing, maintaining or servicing business relationships with family or friends that conflict with my obligations to the Company.

(b) *Prior Relationships*. Without limiting SectionÂ 4(a), I represent that I have no other agreements, relationships or commitments to any other person or entity that conflict with my obligations to the Company under this Agreement or my ability to become employed and perform the services for which I am being hired by the Company. I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law. I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices and documents), I have returned all property and confidential information belonging to all prior employers, and that failure to do so may result in my termination. Moreover, in the event that the Company or any of its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor or successor corporations, or assigns is sued based on any obligation or agreement to which I am a party or am bound (other that my agreements with the Company), I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by the Company (the indemnitee), as well as any reasonable attorneys' fees and costs if the plaintiff is the prevailing party in such an action, in the event that the Company is the subject of any legal action based on factual allegations that, if true, would conflict with my obligations under this Agreement.

**5. Returning Company Documents.** Upon separation from employment with the Company or on demand by the Company during my employment, I will immediately deliver to the Company, and will not keep in my possession, recreate or deliver to anyone else,Â any and all Company property, including, but not limited to, Confidential Information, User Data, Associated Third Party Confidential Information, as well as all devices and equipment belonging to the Company (including computers, handheld electronic devices, telephone equipment, and other electronic devices), Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, photographs, charts, all documents and property, and reproductions of any of the aforementioned items that were developed by me pursuant to my employment with the Company, obtained by me in connection with my employment with the Company, or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to SectionÂ 3(c). I also consent to an exit interview to confirm my compliance with this SectionÂ 5.

**6. Termination Certification.** Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as ExhibitÂ B. I also agree to keep the Company advised of my home and business address for a period of one (1) year after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

Eff. Date: 4.28.08
Non-CA Version

**7. Notification of New Employer**. In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement.

**8. Solicitation of Employees**. I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

**9. Export Statement of Assurance**. I recognize that, in the course of my employment, the Company may release to me items (including, but not limited to, software, technology, or systems, equipment and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR").Â  I herby certify that I will not export, re-export or release these items in violation of the EAR or ITAR.Â  In order to comply with this certification, I will not disclose/export/re-export these items to any person other than the persons in my working group as required in the performance of the job responsibilities assigned to me by the Company.Â  I understand that if I have any question regarding whether a given disclosure/export/re-export is or would be contrary to this certification, I should immediately contact the Legal Services Department before taking any actions.

**10. Code of Conduct Acknowledgement**. I acknowledge that I have read the Company's Code of Conduct, which is available on the Company's public website and can be found by clicking "About Google" and looking on the "Investor Relations" page of the site. I agree to adhere to the terms of the Code of Conduct and to report any violations of the Code.

**11. Acknowledgment of Employee Handbook**. I acknowledge that I have read the Company's Employee Handbook which is available on the Company's internal website. I agree to abide by the policies and guidelines set forth in the Employee Handbook, as they may be revised from time to time.

**12. Representations**. I agree to execute any proper oath or affirmation or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all terms of the Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

**13. Audit**. I acknowledge that I have no reasonable expectation of privacy in any computer, technology system, email, handheld device, telephone, or documents that are used to conduct the business of the Company. As such, the Company has the right to audit and search all such items and systems, without further notice to me, to ensure that the Company is licensed to use the software on the Company's devices in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies, and for any other business-related purposes in the Company's sole discretion. I understand that I am not permitted to add any unlicensed, unauthorized or non-compliant applications to the Company's technology systems and that I shall refrain from copying unlicensed software onto the Company's technology systems or using non-licensed software or web sites. I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents and the internet, email, telephone and technology systems to which I will have access in connection with my employment.

**14. Permission for Use of Images**. I understand that during my employment with Google, agents of the company may take film, digital or other images of me, for subsequent use in non-commercial materials or collateral, including, but not limited to, the Company website (external and internal), annual reports, press day materials, internal presentations, analyst presentations, company, lobby or reception area stagings or productions, etc., without my prior consent, approval or review. My name may or may not be included along

with my image. I hereby grant advance permission for such use of my image(s) by the Company, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use and I further agree to release and hold harmless any agent, employee, officer, director or other individual affiliated or working on behalf of the Company with respect to such use of my image(s).

## 15. <u>Arbitration and Equitable Relief</u>

Eff. Date: 4.28.08
Non-CA Version

Page 4 of 9

(a) *Arbitration*. IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION ADMINISTERED BY JUDICIAL ARBITRATION AND MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"). IN THE EVENT THERE IS NOT A CONVENIENT JAMS LOCATION FOR ARBITRATION, THE PARTIES MAY MUTUALLY AGREE TO ANOTHER ARBITRATION PROVIDER. DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE SARBANES-OXLEY ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE FAMILY AND MEDICAL LEAVE ACT, CLAIMS OF HARASSMENT, DISCRIMINATION AND WRONGFUL TERMINATION, ANY STATUTORY CLAIMS, AND CLAIMS UNDER ANY OTHER APPLICABLE LAWS OF THE STATE OF MY EMPLOYMENT WITH THE COMPANY, TO THE EXTENT ALLOWED BY LAW. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

(b) *Procedure*. I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS OR TO STRIKE, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW. I UNDERSTAND THAT THE COMPANY AND I WILL SPLIT ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS, EXCEPT THAT I SHALL PAY THE ENTIRE FILING FEE ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE. I AGREE THAT

ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH I AM EMPLOYED, AND THAT THE ARBITRATOR SHALL APPLY THE SUBSTANTIVE AND PROCEDURAL LAWS OF THAT STATE, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH THE LAWS OF THE STATE IN WHICH I AM EMPLOYED, THE JAMS RULES SHALL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING. I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SANTA CLARA COUNTY, CALIFORNIA.

(c) *Remedy*. EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL COMPANY POLICY, AND THE ARBITRATOR SHALL NOT ORDER OR REQUIRE THE COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW. NOTHING IN THIS AGREEMENT OR IN THIS PROVISION IS INTENDED TO WAIVE THE PROVISIONAL RELIEF REMEDIES AVAILABLE UNDER THE RULES.

(d) *Availability of Injunctive Relief*. I UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF THE AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT BETWEEN ME AND THE COMPANY OR ANY OTHER AGREEMENT WITH THE COMPANY REGARDING TRADE SECRETS, CONFIDENTIAL INFORMATION, NON-COMPETITION OR NON-SOLICITATION WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR. ACCORDINGLY, BOTH PARTIES SHALL BE ENTITLED, AS A MATTER OF RIGHT, TO SEEK AND OBTAIN, IN ANY COURT OF COMPETENT JURISDICTION WITH RESPECT TO ANY ACTUAL OR THREATENED BREACH OF ANY PROVISION OF THIS AGREEMENT OR ANY OTHER AGREEMENT REGARDING TRADE SECRETS, CONFIDNETIAL INFORMATION, NON-COMPETITION OR NONSOLICITATION: (I) A DECREE OR ORDER OF SPECIFIC PERFORMANCE TO ENFORCE THE OBSERVANCE AND PERFORMANCE OF THE PARTIES' OBLIGATIONS; AND (II) AN INJUNCTION RESTRAINING SUCH BREACH OR THREATENED BREACH. IN THE EVENT THAT EITHER PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER ITS REASONABLE ATTORNEYS FEES' AND COSTS.

(e) *Administrative Relief*. I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, THE WORKER'S COMPENSATION BOARD, OR OTHER AGENCY OF THE STATE IN WHICH I AM EMPLOYED BY THE COMPANY. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

---

Eff. Date: 4.28.08
Non-CA Version

(f) *Voluntary Nature of Agreement*. I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

### 16. General Provisions.

(a) *Governing law; Consent to Personal Jurisdiction*. This Agreement will be governed by the laws of the State in which I am employed, without giving effect to any choice of law rules or principles that may result in the application of the laws of any jurisdiction other than that of the State in which I am employed. To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the exclusive personal jurisdiction of the state and federal courts located in California for any lawsuit filed against me by the Company.

(b) *Entire Agreement*. This Agreement, together with the Exhibits herein, and my offer letter from the Company set forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, other than amendments to paragraphs 3 and 4 relating to personal open source projects in a format prepared by the Company, will be effective unless in writing signed by the Chief Executive Officer of the Company and me. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c) *Severability*. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(d) *Successors and Assigns*. This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(e) *Waiver*. Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

(f) *Survivorship*. The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

Eff. Date: 4.28.08
Non-CA Version

04/12/2010                          Rivka Spivak

Copy of Electronic Form - Googlee                                    Page 9 of 11

**Date**                              **Signature**

Rivka Spivak
**Name of Employee (typed or printed)**

| e-sign agreement |

Eff. Date: 4.28.08
Non-CA Version

Page 7 of 9

<u>Exhibit A</u>

**GOOGLE INC.**

LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP

Number of inventions / improvements :

| Add Invention |

Any inventions or improvements ? ☺ Yes ☻ No

Additional sheets attached ? ☺ Yes ☻ No

Signature of Employee: Rivka Spivak

Print Name of Employee: Rivka Spivak

Date: 04/12/2010

| e-sign exhibit A |

Eff. Date: 4.28.08
Non-CA Version

<u>Exhibit B</u>

GOOGLE INC.

# Termination Certification

*This letter confirms that your employment with Google, Inc. (the "Company") has terminated. We extend our sincere thanks for all of your contributions and our best wishes to you in your future endeavors.*

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Google Inc., its subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's At Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I have informed the Company in the event I am subject to any litigation holds or similar request for record retention.

I further agree that, in compliance with the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, I will adhere to my obligations to the Company contained in Section 2 (Confidential Information), Section 3 (Inventions), and Section 8 (Solicitation of Employees).

After leaving the Company's employment, I will be employed by _____ in the position of: _____.

I am / am not (circle one) subject to a litigation hold/request for record retention.

I have also returned the following Google-issued equipment:

☐ Laptop              ☐ Badge              ☐ WAN card

☐ Cell phone          ☐ Blackberry         ☐ Other: _____

☐ Purchasing card     ☐ VPN card

**Signature of Employee**

**Print Name**

**Date**


**Address for Notifications**

Eff. Date: 4.28.08
CA Version

# EXHIBIT D

**Instructions**
After reading this agreement, finish by clicking "Submit". **Print** and **Sign** the printed form and give it to your HR representative.

Electronic Signature Consent Agreement

Google has implemented certain electronic systems to provide you the ability to access and edit certain employment related information in an easy and efficient manner. Due to the electronic nature of these systems and to achieve the efficiency contemplated, Google has chosen to use electronic authentication in lieu of physical signatures. This agreement is entered into between you and Google Inc., as of the date signed below, to clarify and acknowledge your consent to use electronic authentication for such systems.

By signing below, I agree that Google may accept electronic authentication, consisting of a UserID assigned to me and a password selected by me (collectively, the "Electronic Signature"), as my binding assent and agreement to access and edit certain employment related information. For purposes of clarification, any access or edits made using the Electronic Signature will have the same force and effect as if those actions had been made in conjunction with a written physical signature.

Following are some of the types of actions that can be taken using these electronic systems:

- Acknowledgement of various employment forms and agreements (like Handbook Acknowledgement and Confidentiality Agreement)
- Change in benefits and dependent information
- Change in personal information (like Name, Marital Status etc.)

04/12/2010

**Participant (Employee) Signature**                    **Date Signed**

Rivka Spivak

**Printed Name**

Submit